Judge Care:
In this case, the landlord, under the act of Assembly, made oath before a justice, of the amount of rent reserved, at what time it would become due, and that he had cause to suspect, and did believe, that the tenant would remove his effects before the time of payment; and the justice is> sued his attachment, which was levied and returned to Court. The tenant tendered pleas to the Court, putting in issue the fact of his being about to remove his effects. These were over-ruled by the Court; a judgment rendered for five quarters of rent (it being payable quarterly;) and the attached effects were directed to be sold. The appeal comes to us from this proceeding.
The two questions which seem material to the decision of the case, and which were principally discussed in the argument are; 1. Could the Court, on the return of the attachment, hear and decide the cause on its merits, or were they merely to examine the regularity of the attachment on its face, and direct a sale of the goods? 2. Looking to the attachment, was it, upon the facts appearing on its face, regular; in other words, could it issue for more than the quarter’s rent falling due next after its date?
As to the first question. I do not think the tenant can put in any plea, or make any defence, which may call in question the truth of the landlord’s oath before the magistrate, or contest his claim to rent, upon the merits. The attachment comes in the place of a distress; its purpose is *154 the same, and it is only resorted to, because the landlord fears a removal of the goods, before he could distrain. When a distress is made,.and .a replevy bond given, we know that on the motion on that bond, the tenant would not be heard to call in question the correctness of the landlord’s claim. In- the proceeding on the attachment, the Court seem to me to perform nearly the same function. They cannot, in either case, go into the merits. Yet in both, they must notice defects apparent on the face of the proceeding; and if the bond has been, taken, or the attachment has issued irregularly, or contrary, to law, it would be the duty of the Court, I presume, if called on, to quash either the one or the other. On the first question, therefore, I think the Court did right in rejecting the pleas of the tenant.
On the second point, it is equally clear to me, that they did wrong. If the landlord has just ground to suspect that his tenant will remove his effects, from the leased tenement, “ before the expiration of his term, so as no distress for the rent can be made,” he may go before the justice and make oath “what rent the tenant is to pay, and at what time the same will be due,” and that he believes the tenant will “ remove his effects before the time of payment.” Before the expiration of his term. Does this mean the expiration of the whole length of time for which the premises are leased? impossible. The consequences involved, would, of themselves, forbid such a construction. But the words of the act put it beyond question, “that the tenant will remove his effects, before the expiration of his term, so as no distress for the rent can be made.” Now the rent, in all cases, is payable, either quarterly, or semi-annually, or at the end of each year. But it is quarterly. At the end of each quarter, therefore, distress may be made, though the term of the lease may be 99 years. The attachment before us, shewing that the rent was payable quarterly, and that it issued for five quarters, instead of one, ought to have been quashed.
*155 There is another question, to which the attention of the bar was called by the Court, who heard the former argument. It is this. Could the tenant, in- cases of attachment for rent, avail himself, in any way, of the writ of replevin ? I have looked a good deal into this question. Indeed, it is the only point in the cause, about which I have felt any doubts. These doubts I have not been able to dissipate; and as it is not necessary to ihe decision of the cause, I had rather decline giving any opinion on the question. It is of the less consequence since the act of 1822—3.
I think the judgment of the Court below should be reversed, and the attachment quashed.
Judge Greejt :
The first enquiry is, whether the defendant, upon the return of the attachment, could prevent the order of sale by pleading, as ho offered to do, that there was no just cause to believe that he was about to remove his property off the premises, before the rent became due, or to dispute the amount of the rent claimed by the landlord. I think lie could not. The,rc is no provision in the act of 1736, (which was the first act authorising an attachment for rent not yet due, and which has continued, with slight verbal variations not affecting this question, to this time,) authorising the tenant to re-gain his property attached, in any way but by giving a bond or recognizance, to pay the rent claimed when it should become due. When this act was passed, laws were in force authorising attachments against absconding debtors, which were, in effect, nothing hut a new process allowed for commencing a suit, when the ordinary process could not be served; and the debtor was authorised to replevy the property, upon appearing and giving bond and security to perform the judgment of the Court, and to plead to the action as in any other suit. But even in that case, he could not plead that the attachment was *156 founded on a false suggestion. If that were the fact, he was left to his action upon the bond required from the plaintiff before the attachment issued. With these laws before the Legislature, they would, if they intended that any defence should be made by the tenant, upon the grounds above stated, or any other, have explicitly provided for such defence and its incidents; as in the case of attachments against absconding debtors. They would at least have pro» vided for the security or disposition of the property, pending the controversy, and for expediting the decision of the case, by giving it a priority to other causes on the docketf, as in cases of writs of replevin. They could not be unapprized, that keeping negroes or live stock which might be attached, in the hands of the officer, until a suit could be decided in the regular course of proceedings, would be attended with serious loss to the party finally liable to pay the expenses of keeping, and possibly expose the landlord to the loss of his rent, by reason of the property perishing. The Court are not authorised to give any judgment, or to make any enquiry; and although the Legislature have since frequently had the laws respecting attachments against absconding debtors and for rents, before them, they have not thought proper to remedy this defect. It has been decided in Hallam v. Jones, Gilm. 142, that the general laws relating to attachments against absconding debtors, do not extend to attachments for rent, notwithstanding the generality of the words “all attachments.” It seems to me that the law contemplated the oath of the landlord, as to the grounds of suspicion that the tenant intended to remove his property, the amount of the rent, and the time when it became due, as a sufficient foundation for the order of sale; leaving him to his responsibility for any wrong thereby done to the tenant, in an action by the latter.
I think too, that no replevin lay at common law, or under our statute, in such cases. Not at common law, because the seizure and sale is made by express direction of the statute; and in such cases, no replevin lay at coxnmon *157 law. But the views taken upon other points of this ease, renders it unnecessary to discuss that point; especially since the act of 1823, has abolished the common law replevin altogether.
To give a construction to this statute, which would enable the landlord to attach for all rents which might thereafter become duo, at ever so remote periods, would involve such consequences as I am sure the Legislature would never have sanctioned, if foreseen. The statute is in the most general terms, and provides equally, and in the same terms, for all rents growing due; whether upon terms, the duration of which is certain, or upon terms, the duration of which is uncertain. Upon a lease for life or other uncertain term, rent may become due after the termination of the estate of the tenant; but only one rent can so become due. There is no inconvenience in allowing an attachment for one rent, so certainly to become due. But it never could be contemplated to allow an attachment for rents to become due after the first, and to sell the property of the tenant, for rents which may never become duo. Again; an attachment will lie for rents reserved in corn, wheat, or other property. The Court or jury might estimate, with reasonable exactness, the value of such articles at a short time hereafter, but surely the Legislature could not intend to call upon them to estimate the value of such articles, at the distance of 15 or 20 years. If the tenant has actually removed his property, the landlord can only distrain for the rent due; or attach for the next rent to become due; and surely, the Legislature could not intend to put the landlord in a better, and the tenant in a worse situation, when the latter was only about to remove his property, than they would respectively be in, if the property was actually removed. The words “ before the expiration of his term,” cannot receive a literal interpretation, without violating the litoral meaning of many other woi’ds in the same clause, and involving the consequences before alluded to. I think, therefore, that the act only au *158 thorises an attachment for the next rent to become due, at 0f the attachment. It has frequently been settled, that such summary and harsh remedies must be strictly pursued; and if not, that the Court, ex-officio, or upon the application of the party aggrieved, will quash the proceedings., The -attachment in this case, irregularly issued for five quarters rent, when it could only regularly be issued for one quarter’s rent; and therefore, should be quashed.
The proceedings are erroneous also, inasmuch as the Court gave a personal judgment against the tenant, which the law. did not authorise.
Judge Co alter;
I have struggled hard to support, what would seem to me to be very reasonable, that in case of a wrongful attachment, under the-act of Assembly in question, the tenant should have some means of defending himself, either upon the return of the attachment, or by a common law replevin of the goods; and should not be left solely to his action at law for such wrongful taking, or to his bill in equity to stay proceedings. But when I consider that this law has been in force for near a century, and that it has frequently been before the Legislature, as well upon revisáis of the law, as for amendments thereto, without any provision to this effect being made, as it regards the tenant, at the same time that remedies have been provided, in relation to third persons, I am led to believe that the mischief, as to the former, has not been so great, as at first view it would seem; and that therefore, no remedy in this respect has been thought of, or. deemed necessary.
The replevin, under the act in question, in case of rent in arrear, it would seem to me, would not lie; and as to the common law replevin, in addition to other objections, the act of 1822, ch. 29, § 9, which abolishes such replevin, although it passed since this case occurred, seems to be a strong Legislative opinipn, that such replevin did not exist *159 in this case; and were we to decide that it did, cases since that act would be without that remedy. As to any effectual trial, on the return of the attachment, and which would operate as a bar to an action against the landlord, for suing a wrongful attachment, as the Court is not authorised to give any judgment in the case, it would seem to me, not to be authorised by the act; any more, than in the case of a distress for rent, alledged to be in arrear. The attachment comes in place of such distress, and is given before the rent falls due, on the ground that such distress is about to be defeated by the wrongful act of the tenant.
This decision will not extend to preclude any objection for want of regularity apparent on the face of the attachment, which I think exists in this case; inasmuch as it appears to me, that it can only issue for the first rent growing due. It comes in lieu of the distress for such rent as aforesaid; and in addition to other ample reasons which I need not repeat, a right to attach, for an indefinite number of rents growing due, would seem to defeat that section of the act which limits the right of distress itself to five years rent; that is, that no distress shall be made, but within five years after the rent shall become due.
I am also of opinion, that the Court had no power to adjudge what rent would become due, or to enter a personal judgment against the appellant for such rent. Such adjudication, pre-supposes the right to hear the parties; whereas, the power of the Court is limited to an order to sell the attached effects.
In addition to the other reasons urged, such judgment being res adjudicata, might be a bar to any suit by the tenant for a wrongful attachment, on the ground that no rent was contracted for, or would become due, at the same time that no provision is made to enable him to make any effectual defence, on this or any other ground.
For these reasons, I think that the judgment and order «f sale must be reversed, and the attachment quashed.
*160 The President:
Upon the first point made in this case, I am of opinion, that the two pleas of the appellant were properly rejected by the inferior Court.
On the second point, I am of opinion, that under the provisions of the act for better securing the payment of rent, the attachment was improperly awarded by the magistrate for more than the quarter’s rent next to become due, the rent being payable quarterly.
I concur, therefore, with the other Judges, that the judgment is to be reversed, and the attachment quashed.*

 Judge Cabell, absent.